JOHN ANDERSON *vs.* SUSAN F. W. AMES.

| 181   526|

Worcester.    September 30, 1889. — January 17, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Married Woman — Agency of Husband — Payment.*

On the issue whether a husband had authority to loan money and take an assignment of a mortgage as security for it, in his wife's name and on her account, and afterwards to receive payment thereof, there was evidence that he and she had money, which was never kept separate but was included in a bank account kept in his name, and which he invested as he pleased; that he had sometimes had mortgages made out to her; and that for several years he had lent his and her money in considerable amounts. *Held*, that a finding was warranted that he was her general agent, with authority to loan her money on mortgage security, and to receive payment thereof when due, and, upon receiving an overpayment by check, to agree to pay back the balance due the debtor at the same time.

CONTRACT for money had and received. Trial in the Superior Court, before *Hammond*, J., who, after a verdict for the plaintiff, allowed a bill of exceptions which appear in the opinion.

*F. A. Gaskill*, for the defendant.

*D. Manning, Jr.*, for the plaintiff.

KNOWLTON, J.  The defendant is a married woman to whom
a mortgage for $3,100 was assigned as security for a loan of
$2,700 ; and the question principally argued before us is, whether
her husband, H. H. Ames, had authority to make the loan and
take the assignment of the mortgage in her name and on her
account, and afterwards to receive the money in payment of it.
H. H. Ames was called as a witness by the plaintiff, and testi-
fied, among other things, that his wife had property ; that he had
sometimes had mortgages made out to her ; that he and she had
money together, and that he had done just as he pleased in the
investment of it ; that he kept a bank account, which contained
his money and hers ; that their money was never kept separate ;
and that he could not tell how much of his and her money he
had lent to Mr. Hall within two or three years, but perhaps
$20,000, perhaps $10,000.  The defendant did not testify.  We
think the evidence was ample to warrant the jury in finding that
he was her general agent, with authority to lend her money on
mortgage security, and to receive payment of the debts when
they became due.  In the present case, he made the loan to
Hall, and took an assignment to the defendant of a mortgage of
real estate given to Hall by the plaintiff.  Payment of the debt
and interest was made by a check for $3,000, payable to H. H.
Ames, given by a bank which had made a loan of that sum to
the plaintiff, and taken a mortgage on the same real estate as
security.  The plaintiff, H. H. Ames representing the defend-
ant, Hall, and a representative of the bank, were all together
when this check was delivered, and the parties apparently ar-
ranged that it should cancel the debt from Hall to the defendant
and the original mortgage liability of the plaintiff to Hall.  The
check was for $256.40 more than was due the defendant, and it
appears to have been arranged that the defendant, through H.
H. Ames, should pay that sum to Hall on the plaintiff's account.
It was agreed at the trial, that H. H. Ames made to Hall on the
same occasion a payment of $356.40 by check, a part of which
was a loan made to Hall on another account, which had no con-
nection with the undertaking as the defendant's agent to pay
back the balance of the check for $3,000 which he had received
on her account.  The plaintiff contended that $200, and the de-
fendant maintained that only $100 of it, was on account of said

loan. The jury found that the plaintiff's contention was correct, and that $100 from the proceeds of the check for $3,000 which the defendant should have paid back to the plaintiff, or paid to Hall on his account, has never been accounted for, but remains in the hands of H. H. Ames, her agent. Did the evidence warrant the jury in finding that the defendant's husband was authorized to receive a payment in that form? If it was a reasonable and proper way of receiving payment under the circumstances, it would be covered by his general authority. Upon the bill of exceptions, we cannot say, as matter of law, that it was not. The particulars of the arrangement are not stated; but we infer that all parties interested in the payments to be made for which the real estate was security, and in the new loan which was secured on the same property, were brought together, in order that the old mortgage might be cancelled and the new mortgage take effect at the same instant, and that the advancement of money on the new loan might be a payment of the old debts. We think the facts stated would have warranted the jury in inferring other facts which would have shown that it was reasonable for the defendant, through her agent, to arrange to accept a check of the bank for a larger sum than her debt in payment of it, and to agree to pay back at the same time the balance to the plaintiff or to Hall on his account, and that such an arrangement was within the general authority of H. H. Ames.

We are also of opinion that the court was right in refusing to rule that this balance was paid to the defendant by Hall, and that therefore the plaintiff could not maintain his action. The facts are entirely consistent with the existence of an agreement made between the plaintiff and the defendant's agent, with the consent of Hall, that the defendant should pay this money to Hall on the plaintiff's account.

*Exceptions overruled.*